IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EDDIE E. ABRAM, <br><br> Plaintiff, <br><br> vs. <br><br> LARRY SOHLER, 2 East Unit Manager, Individual Capacity; LEON CHATHAM, Security Specialist 2, Individual Capacity; MICHELLE SULLIVAN, Security Specialist 2, Individual Capacity; STEPHANIE BEASLEY, Security Specialist 2, Individual Capacity; HUNTER LEWIS, Response Team, Individual Capacity; and KOLTON NEUHAUS, Response Team, Individual Capacity; <br><br> Defendants. | 8:22-CV-152 <br><br><br> **MEMORANDUM AND ORDER ON MOTION TO DISMISS** |

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss. Filing 23. Eddie E. Abram, a civilly committed patient at Norfolk Regional Center (NRC), filed this action *pro se* pursuant to 42 U.S.C. § 1983. He alleges Defendants, all NRC staff members, violated his constitutional rights under the First and Fourteenth Amendments when they forcibly restrained him and injected him with an unknown substance because he sought information about an alleged infraction he thought was a mistake. Filing 1 at 7–8. This matter is before the Court on Defendants' Motion to Dismiss. Filing 23. Defendants contend Abram has not alleged sufficient facts showing each defendant's role in the alleged forcible injection. Filing 24. Abram has not responded to

1

Defendants' Motion. For the following reasons, the Court grants in part and denies in part Defendants' Motion.[1]

## II. BACKGROUND

Abram is a civilly committed mental patient at NRC, a state-run mental-health medical center operated by the State of Nebraska. Filing 1 at 7. In his Complaint, Abram asserts that Defendants, all NRC staff, violated his constitutional rights after he sought out information about being placed on "privilege suspension" for calling another patient a derogatory name so that he could get the discipline removed before he appeared in front of the Nebraska Mental Health Board. Filing 1 at 7–8. Abram attempted to investigate the privilege suspension because he believed it was a mistake and did not want it on his record. Filing 1 at 7. He first sought information from Defendant Larry Sohler, the "2 East Unit Manager" and "Unit Supervisor," who told Abram to contact one of the "Security Specialist 2s" (SS2s) for information. Filing 1 at 7. Abram then allegedly sought out information from three "SS2s"—Defendants Leon Chatham, Michelle Sullivan, and Stephanie Beasley—who refused to assist him. Filing 1 at 7. Afterwards, Sohler purportedly told Chatham, Sullivan, and Beasely that he never told Abram to contact them. Filing 1 at 7. During this interaction, the "Response Team" was called on the radio for assistance, although the Complaint does not explain who called the Response Team. Filing 1 at 7. Defendants Hunter Lewis and Kolton Neuhaus responded to this call. Filing 1 at 7. Abram asserts that Chatham, Sullivan, Beasley, Lewis, and Neuhaus then pinned him to a wall in the "day hall of housing unit 2." Filing 1 at 7. Abram claims that Lewis and Neuhaus then dragged him down the hall to the "Seclusion Room." Filing 1 at 7. Chatham, Sullivan, Beasley, Lewis, and Neuhaus then

---

[1] The Court of course makes no conclusions as to whether Plaintiff's claims could survive a motion for summary judgment. The question facing this Court is whether Plaintiff's claims should be dismissed now without the Court having the opportunity to review any evidence.

2

allegedly forced Abram into a restraining chair, all while pulling and twisting his limbs, where two "chemical restraints" were given to Abram without his consent. Filing 1 at 7. As a result of these events, Abram states he is suffering from severe anxiety. Filing 1 at 7.

On April 18, 2022, Abram filed suit[2] against Defendants in their individual capacities for violating his constitutional rights under the First and Fourteenth Amendments. Filing 1. Abram seeks $500,000 per defendant for violating his constitutional rights and $250,000 per defendant for physical and medical damages. Filing 1 at 8.

The Honorable Richard G. Kopf, Senior United States District Judge for the District of Nebraska, conducted an initial screening of Abram's complaint pursuant to 28 U.S.C. § 1915(e)(2). Filing 7. In his Order on April 28, 2022, Judge Kopf stated that Abram had alleged a plausible conditions-of-confinement claim pursuant to 42 U.S.C. § 1983, Filing 7 at 2–3, although he did not address Abram's claim under the First Amendment nor refer to an excessive-force claim. On June 1, 2022, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting Abram has failed to state a claim upon which relief can be granted. Filing 23.

### III. ANALYSIS

#### A. Standard of Review

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199,

---

[2] In a former lawsuit, Abram sued Defendants under the same allegations in their official capacities, which this Court dismissed without prejudice after determining it lacked subject matter jurisdiction because Defendants had sovereign immunity. *Abram v. Chatham*, Case No. 8:20-cv-00469 (D. Neb. December 13, 2021).

1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a

4

pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

### B. Preliminary Matters

As a preliminary matter, the Court addresses whether Abram's failure to respond to Defendants' Motion to Dismiss under Rule 12(b)(6) operates as a waiver and constitutes abandonment of his claims. Of course, by failing to file a brief opposing Defendants' Motion, Abram has waived any arguments he may have raised against it. *See Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051 (8th Cir. 2021) (holding that a plaintiff had waived an argument by failing to raise it in opposition to the defendant's motion to dismiss); *cf. Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) ("The 'failure to oppose a basis for summary judgment constitutes waiver of that argument'. . . ." (quoting *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009))). Nevertheless, it does not necessarily follow that Abram's waiver of arguments against the Defendants' Motion to Dismiss constitutes Abram's abandonment of his claims.

When faced with a motion to dismiss, a court's duty is to "determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far. E. Aluminum Works Co.*, 27 F.4th at 1364 (quoting *Braden*, 588 F.3d at 594). All that is required to meet this plausibility standard is for the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bushner*, 33 F.4th at 499. Because what matters when ruling on a motion to dismiss is the factual allegations in the complaint, not the plaintiff's arguments in opposing a motion, the Court agrees with the majority of the federal courts of appeal that have held that merely failing to respond to a motion to dismiss, without more, does not warrant dismissal. *See, e.g.*,

5

*Marcure v. Lynn*, 992 F.3d 625, 631 & n.4 (7th Cir. 2021) (holding that "courts may not grant Rule 12(b)(6) motions solely because they are unopposed" and citing cases from the six circuits that follow this rule).³ *But see Cohen v. Bd. of Trustees of the Univ. of the D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016) (permitting dismissals without prejudice for failing to respond to a motion to dismiss); *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004) (holding that failing to respond to a motion to dismiss can warrant dismissal if the plaintiff is required by a local rule to respond). Indeed, Abram's ineffectual attempt to compel discovery after Defendant's filed their Motion shows that he does not intend to abandon his claims. *See* Filing 25 (motion to compel discovery); Filing 26 (order denying motion to compel). Therefore, the Court concludes that Abram's failure to respond, by itself, does not permit dismissing his claims.

Next, the Court addresses the effect of Judge Kopf's April 28, 2022, initial review Order in this case pursuant to 28 U.S.C. § 1915(e)(2). Filing 7. As previously mentioned, Abram's Complaint brings claims under the First and Fourteenth Amendments. Filing 1 at 7–8. In his screening order, Judge Kopf found that Abram had alleged a plausible conditions-of-confinement claim related to the forcible injections of an unknown substance but did not otherwise address Abram's First Amendment claim or whether the conduct leading up to the forcible injections stated a claim under the Fourteenth Amendment. In their Motion, Defendants not only argue that Abram's Complaint fails to state a claim based on the forcible injections but also argue that the events leading up to the forcible injection do not rise to the level of a plausible claim for relief. Filing 24 at 4. The issue the Court must confront is whether it may consider potential claims that Judge Kopf's Order did not address.

---

³ The Seventh Circuit Court of Appeals recognizes that a complaint could be dismissed when the plaintiff fails to offer a response if "(1) the nonmovant's action evinces intent to abandon suit; (2) there is failure to prosecute; or (3) dismissal is a sanction for the nonmovant's inaction." *Marcure*, 992 F.3d at 631. None of these grounds apply in this case.

6

The Eight Circuit Court of Appeals has recognized the inherent power of the district courts "to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995)); *see also United States v. Hively*, 437 F.3d 752, 766 (8th Cir. 2006) (holding that the "law of the case" doctrine does not apply to interlocutory orders). Here, the Court feels compelled to determine if Abram's has plausibly alleged a First Amendment claim and whether the conduct leading up to the injections also states a claim under the Fourteenth Amendment.

The Court begins by determining the type of claim Abram has alleged under the Due Process Clause of the Fourteenth Amendment. In his Complaint, Abram asserts that Chatham, Sullivan, Beasley, Lewis, and Neuhaus pinned him to a wall, used joint and bone locks, strapped him into a chair, and then forcibly injected him with "chemical restraint" medications after he inquired about why he received an infraction. Filing 1 at 7–8. Abram first claims that Chatham, Sullivan, Beasley, Lewis, and Neuhaus pinned him to a wall. Filing 1 at 7. Lewis and Nehaus then obtained control over him while Chatham, Sullivan, and Beasley prepared a retraining chair for Abram in the "Seclusion Room." Filing 1 at 7. Lewis and Neuhaus dragged him into the "Seclusion Room," where these five defendants "forced [Abram] into the chair and strapped [Abram] down so [he] could not move." Filing 1 at 7. After being restrained, Abram claims he was "given two injections, one in each arm." Filing 1 at 7.

In his Order, Judge Kopf determined that Abram's had stated a plausible conditions-of-confinement claim based on Abram's being subjected to unwanted injections of an unknown substance. Judge Kopf identified the source of this claim as the "procedural protections required by the Due Process Clause." *See Washington v. Harper,* 494 U.S. 210, 229 (1990). The cases

7

Judge Kopf cited in support of such a claim involve the procedural safeguards a state must put in place before imposing a medical treatment on an individual in state custody. *See id.* at 232–35 (examining whether a state's prison policy provided sufficient procedural due process protections before imposing a medical treatment plan on a mentally ill inmate); *Thomas v. Eschen*, 928 F.3d 709, 713 (8th Cir. 2019) (holding that forcing an individual in civil confinement "to take drugs having no connection to his mental illness or intentionally injur[ing] him while treating him" could be a viable damages claim, while citing an earlier decision about the procedural protections required to institute a medical treatment plan on a mentally ill state prisoner (citing *Morgan v. Rabun*, 128 F.3d 694, 697 (8th Cir. 1997))).

The Court concludes that the framework for excessive-force claims under the Due Process Clause of the Fourteenth Amendment is more applicable to Abram's Complaint. Rather than challenging a treatment plan involving forced medication, the gravamen of the Complaint concerns the use of injections to restrain Abram, not to treat him.

Individuals in civil confinement, such as Abram, are protected from the use of excessive force that amounts to punishment under the Due Process Clause of the Fourteenth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397–98 (2015) ("We have said that 'the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)); *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001) (analyzing excessive-force claim brought by an involuntarily committed state hospital patient under the "objective reasonableness standard" for pretrial detainee excessive-force claims). Given the liberal construction for *pro se* complaints and the lesser pleading standard for *pro se* litigants, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court construes Abram's asserted Fourteenth Amendment claim as one for excessive force under that amendment's Due

Process Clause, involving not just the forcible injections of "chemical restraints" but the physical restraints used to subdue him prior to those injections.

Next, the Court turns to whether Abram has stated a claim under the First Amendment, a claim that Judge Kopf did not consider. In his Complaint, Abram alleges that Defendants assaulted him for attempting to investigate his disciplinary charges. Specifically, Abram claims that Defendants' conduct aimed to "silence [him] from getting answers" about the infraction he was given and to "silence [him] from finding the truth." Filing 1 at 7. Again keeping in mind the lesser pleading standards required of *pro se* litigants, see *Erickson*, 551 U.S. at 94, the Court construes Abram's asserted First Amendment claim as one for First Amendment retaliation. He has alleged that, in response to him asking questions about his discipline so that it could be removed from his file, Defendants pinned him to a wall, strapped him to a chair, and administered injections to "chemically restrain" him. See *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012) (stating, for a First Amendment claim brought by civilly confined individuals, the plaintiffs needed to show an adverse action that "was motivated at least in part by" activity protected under the First Amendment); *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010) (holding that the First Amendment protects an involuntary committed individual's filing of grievances and access to the grievance process).

Judge Kopf's Order was silent on the issues of whether Defendants' pre-injection conduct could be construed as alleging a violation of the Fourteenth Amendment and if Abram had stated a claim under the First Amendment. The Court has therefore provided an initial review of the Complaint under 28 U.S.C. § 1915(e)(2) and construes Abram's Complaint as alleging an excessive-force claim under the Fourteenth Amendment's Due Process Clause and a First Amendment retaliation claim. Because Defendants' arguments in support of its Motion apply to

Abram's Complaint as a whole, not just the narrow issue of whether the forcible injection by itself violates the Constitution, the Court now addresses whether any of the asserted claims in the Complaint survive Defendants' Motion to Dismiss.

### C. Failure to State a Claim

Abram asserts in his Complaint that his constitutional rights under the First and Fourteenth Amendments were violated when Defendants slammed him against a wall, implemented joint and bone locks, strapped him into a chair, and "chemically restrained" him to prevent him from challenging his privilege suspension and future write-ups. Filing 1 at 8. Defendants move to dismiss this action on the grounds that Abram has not provided sufficient facts to allege each individual defendant's role in the alleged constitutional violations. Filing 24 at 3. For the reasons below, the Court finds that Plaintiff has alleged plausible claims against Defendants.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." *Faulk v. City of St. Louis, Missouri*, 30 F.4th 739, 744 (8th Cir. 2022) (quoting *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006)). "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). Indeed, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. However, the Eighth Circuit Court of Appeals has stated that "[a] *pro se* complaint must be liberally construed, and *pro se* litigants are held to a lesser

pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (internal quotation marks and citations omitted).

1. *Excessive Force Claim*

The Court concludes that Abram has plausibly alleged an excessive-force claim against Chatham, Sullivan, Beasley, Lewis, and Neuhaus. As previously mentioned, individuals in civil confinement are protected from the use of excessive force under the Due Process Clause of the Fourteenth Amendment. *See Kingsley*, 576 U.S. at 397–98; *Andrews*, 253 F.3d at 1061. The Eighth Circuit Court of Appeals has held that excessive force claims brought by individuals in civil confinement are analyzed "under the objective reasonableness standard usually applied to excessive-force claims brought by pretrial detainees." *Andrews*, 253 F.3d at 1061. Because this standard is an objective one, the Court "looks only to whether the officer's actions were 'objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 762 (8th Cir. 2021). "A court must . . . account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of [the] officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 576 U.S. at 397 (second and third alteration in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). Relevant considerations include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

11

Given the liberal construction for *pro se* complaints and the lesser pleading standard for *pro se* litigants, *see Erickson*, 551 U.S. at 94, the Court concludes that Abram has plausibly alleged an excessive-force claim against all Defendants. In the Complaint, Abram alleges that Chatham, Sullivan, Beasley, Lewis, and Neuhaus each personally participated in using force against him in response to him asking questions about his discipline. Filing 1 at 7–8. Furthermore, again remembering that *pro se* complaints are given a liberal construction and subjected to a lesser pleading standard, *see Erickson*, 551 U.S. at 94, the Complaint alleges in sufficient detail that these defendants were each personally involved in using excessive force on Abram. Abram claims that Chatham, Sullivan, Beasley, Lewis, and Nehaus pinned him to a wall; Lewis and Nehaus dragged him to a separate room; these defendants strapped him into a chair; and that injections were administered to "chemically restrain" him.

Although a somewhat closer call, the Court also concludes that the Complaint plausibly alleges that Sohler violated Abram's rights under the Due Process Clause of the Fourteenth Amendment for failing to intervene to stop the use of excessive force. A claim for failing to intervene to prevent the use of excessive force requires the plaintiff to allege that the defendant official was "deliberately indifferent to a substantial risk of serious harm" to the plaintiff and failed to protect him. *Edwards v. Byrd*, 750 F.3d 728, 733 (8th Cir. 2014) ("A jail official violates the Due Process Clause . . . when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee." (alternation in original) (quoting *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013))).[4] If the defendant "official knows that another official is

---

[4] Although *Edward v. Byrd* involved jail officials, given that the Eight Circuit Court of Appeals has evaluated cases brought by involuntarily committed individuals and pretrial detainees under the same standards in the past, the Court concludes the standard in *Edward v. Byrd* applies here. *See Karsjens v. Lourey*, 988 F.3d 1047, 1053 (8th Cir. 2021) (holding that the standard for punitive conditions of confinement outlined in *Bell v. Wolfish*, 441 U.S. 520 (1979) applied to both involuntarily committed individuals and pretrial detainees); *Serna v. Goodno*, 567 F.3d 944, 948 (8th

using excessive force against the [plaintiff] but fails to intervene," then the defendant has violated the plaintiff's due-process rights. *Id.* Here, Abram has alleged that Sohler was present when Abram was asking Chatham, Sullivan, and Beasley about his discipline. While Abram was questioning Chatham, Sullivan, and Beasley, the "Response Team" was called and Neuhaus and Lewis arrived. These five defendants then proceeded to use what the Complaint plausibly alleges was excessive force against Abram. It is reasonable to infer that, given Sohler's presence at the scene, he observed the excessive force being used against Abram and failed to intervene. *See Bauer*, 25 F.4th at 589 (stating that, in ruling on a Rule 12(b)(6) motion, a court must "draw[] all reasonable inferences in favor of the nonmovant" (quoting *Pietoso*, 4 F.4th at 622)). Accordingly, Abram has plausibly alleged Sohler's personal involvement in the violations of his constitutional rights and, therefore, his Complaint survives Defendants' Motion to Dismiss as to all Defendants.

2. *First Amendment Retaliation Claim*

Next, the Court turns to Abram's claim that Defendants violated his rights under the First Amendment. The Court concludes that Abram has plausibly alleged a First Amendment retaliation claim against Chatham, Sullivan, and Beasley. Filing 1 at 8. To bring a claim for First Amendment retaliation, Abram must allege "(1) that [he] engaged in a protected activity, (2) that the defendants responded with adverse action that would 'chill a person of ordinary firmness' from continuing in the activity, and (3) that 'the adverse action was motivated at least in part by the exercise of the protected activity.'" *Beaulieu*, 690 F.3d at 1025 (8th Cir. 2012) (quoting *L.L. Nelson Enterprises, Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 807 (8th Cir. 2012)).

---

Cir. 2009) (holding that unlawful-search cases brought by involuntarily committed individuals are analyzed under the same standard as unlawful-search cases brought by pretrial detainees); *Andrews*, 253 F.3d at 1061 (holding that excessive-force claims brought by involuntarily committed individuals and pretrial detainees are evaluated under the same standard).

13

First, Abram has alleged that he engaged in a protected activity by asking these defendants about his discipline so that he could get it removed from his file before his hearing in front of the Nebraska Mental Health Board. *See Nelson*, 603 F.3d at 450 (holding that the First Amendment protects an involuntary committed individual's filing of grievances and access to the grievance process). Additionally, these defendants' alleged conduct, which included slamming Abram against a wall and strapping him to a chair, would "chill a person of ordinary firmness" from engaging in this protected activity. Lastly, Abram has alleged that these defendants' actions were intended to "silence" him and to keep him from challenging future discipline, which is sufficient to claim that the conduct was motivated, at least in part, by Abram's protected activity.

However, because the Complaint does not allege that Neuhaus and Lewis knew about Abram's protect activity—they arrived on the scene after Abram asked about his discipline—it has failed to state a First Amendment retaliation claim against them. *see Lyons v. Vaught*, 781 F.3d 958, 963 (8th Cir. 2015) (noting that "many cases have dismissed retaliation complaints that failed to allege that the defendant taking adverse action knew of the protected activity."). Moreover, the Complaint does not plausibly allege a First Amendment retaliation claim against Sohler because it does not state that Sohler participated in the alleged assault or took any adverse action against Abram. Therefore, Abram has stated a plausible claim under the First Amendment against Chatham, Lewis, and Beasley, but not against Sohler, Neuhaus, or Lewis.

## IV. CONCLUSION

Abram has plausibly alleged that Defendants violated his constitutional rights. The Complaint states a claim under the Fourteenth Amendment against Chatham, Lewis, Beasley, Neuhaus, and Lewis for using excessive force; a claim under the Fourteenth Amendment against

Sohler for failing to intervene to prevent the use of excessive force; and a First Amendment retaliation claim against Chatham, Lewis, and Beasley. Accordingly,

IT IS ORDERED:

1. Defendants Motion to Dismiss, Filing 24, is granted in part and denied in part.

Dated this 4th day of August, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

15